# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MAXUS METROPOLITAN, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. |
| | ) |
| TRAVELERS PROPERTY CASUALTY | ) |
| COMPANY OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Maxus Metropolitan, LLC ("Plaintiff" and "Maxus"), by and through its undersigned counsel, alleges the following regarding its claims against Travelers Property Casualty Company of America ("Defendant" and "Travelers"):

## THE PARTIES

1. Plaintiff Maxus Metropolitan, LLC ("Plaintiff" and "Maxus") is a limited liability company organized and existing under the laws of the state of Missouri.

2. Defendant Travelers Property Casualty Company of America ("Defendant" and "Travelers") is a corporation organized under the laws of Minnesota with its principal place of business at 1 Town Square, Hartford, Connecticut 06183.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the Defendant pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Maxus and Travelers and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Missouri.

**FACTUAL BACKGROUND**

5. In early 2018, Bomasada Group, Inc., a nationwide developer of multifamily residential complexes, through one of its affiliates, Bomasada Birmingham Nationwide, LLC ("Bomasada"), began to construct a property known as the "Metropolitan" at 2900 7th Avenue South, Birmingham, Alabama.

6. The Metropolitan is a four-story, multi-unit luxury apartment complex consisting of 262 individual units housed across six fire phases, referred to as Phases 1-6.



7. Shortly after construction began, Bomasada sold the Metropolitan to Maxus Metropolitan, LLC.

8. On or about September 27, 2018, while construction was ongoing, a fire completely destroyed Phase 6 and caused damage to Phases 1-5 (the "Fire").

2



9. Travelers had issued Bomasada a Commercial Inland Marine policy, policy no. QT-660-7E077026-TIL-18, effective March 31, 2018 to September 30, 2018, which covered the Metropolitan at the time of the fire (the "Policy"). A copy of the Policy is attached hereto as **Exhibit A**.

10. As the owner of the Metropolitan, and pursuant to the Agreement and the terms of the Policy, Maxus is also a named insured on the Policy.

11. One day after the fire, Bomasada and Maxus notified Travelers of the loss and filed an insurance claim for damages.

12. The Policy states that in the event of a loss, Travelers must indemnify the insureds up to the coverage limit of $35,000,000 for any covered loss.

13. More specifically, the Policy provides:

**CONSTRUCTION PAK – BUILDERS' RISK COVERAGE FORM**

…
**A.     COVERAGE**

…
We will pay for direct physical loss of or damage to Coverage Property caused by or resulting from a Covered Cause of Loss.

**1.     Covered Property**

Covered Property, as used in this Coverage Form, means the following types of property you own or for which you are legally liable, the value of which is included in the estimated "total project value" shown in the Declarations:

**a.     Permanent Works**

Materials, equipment, machinery, supplies and property of a similar nature that will become a permanent part of the project described in the declarations during completion of such project or that will be used or expended in the completion of such project.
…
**b.     Temporary Works**

Cofferdams, construction forms, cribbing, falsework, hoarding, scaffolds, fencing, signs, office trailers (and their "contents") and similar temporary buildings or structures incidental to completion of the project described in the Declarations.

14.     "Covered Cause of Loss" is defined as "Risks of direct physical loss unless the loss is excluded. . . ." Neither fire nor combustion byproduct damage are listed as an excluded loss.

15.     Several months after the fire, Maxus discovered that there was additional, less readily apparent combustion byproduct damage to the buildings caused by the soot and smoke from the fire.

16.     Maxus hired consultants who tested and ultimately determined that the soot and smoke from the fire had caused wide-spread combustion byproduct damage throughout Phases 1-5 of the Metropolitan, which potentially posed health risks to Maxus' tenants.

4

17.     On or about May 1, 2019, Maxus informed Travelers of the combustion byproduct damage and the need for quick action to protect its tenants. Maxus invited Travelers to inspect the property as part of Travelers' claim investigation and hire its own expert to conduct testing, if it desired.

18.     On June 6, 2019, more than a month after learning of the potential health concerns, Travelers stated that it wanted to reinspect the property with its own expert on June 13, 2019. *See* June 6, 2019 correspondence attached hereto as **Exhibit B.**

19.     The following day, June 7, 2019, Maxus provided Travelers its consultant's report showing potentially significant safety, clean-up, and remediation issues, and explaining that it was critical that Maxus receive a response and funds from Travelers to assist with the proposed course of action. *See* June 7, 2019 correspondence attached hereto as **Exhibit C.**

20.     Having received no response, Maxus wrote Travelers again on June 11, 2019, explaining that Maxus intended to instruct tenants of the need to vacate during remediation and rebuild and again explaining the urgency of the matter. *See* June 11, 2019 correspondence attached hereto as **Exhibit D.**

21.     Maxus's June 11, 2019 letter stated, "[I]t is imperative that we hear from you immediately if you have any objection or do not see the necessity of proceeding [with the evacuation]. . . ."

22.     Maxus's June 11, 2019 letter further stated, "Unless we hear from your [sic] otherwise by the close of business tomorrow, June 12, we will proceed with the understanding that you have no objection to our plan for the removal of residents during remediation and rebuild."

23. Receiving no response from Travelers, Maxus notified the tenants that evacuation was required due to the serious health risks posed by the fire damage and the extent of repairs and remediation required.

24. Maxus hired BCCM Construction Group, Inc. ("BCCM") to oversee the majority of the remediation and rebuild work necessitated by the Fire.

25. BCCM in turn hired Royal Restoration, LLC ("Royal") as a subcontractor to perform portions of BCCM's demolition and remediation scope of work.

26. It was not until December 16, 2019, *more than six months* after Travelers' consultant had inspected the property, that Travelers provided a coverage opinion on the secondary damage claim. Travelers stated that Maxus' alleged damage from smoke and soot in the buildings that were not burned was not caused by the fire, and therefore denied coverage.

27. Notably, although the information was not shared with Maxus until December 16, 2019, the report completed by the hygienist hired by Travelers is dated August 2, 2019.

28. On December 19, 2019, Maxus sued Travelers, claiming it breached the Policy by denying coverage of Maxus' claim by unreasonably refusing and/or failing to investigate, respond to correspondence, and pay, in full, all loss and damage arising out of or in connection with the claim (the "Lawsuit").

29. Maxus also asserted that Travelers' conduct constituted a vexatious refusal to pay Maxus pursuant to the Policy.

30. On August 3, 2023, following an eight-day jury trial (the "Trial"), Maxus was awarded all the previously unpaid damages it had incurred to date resulting from the Fire, including those incurred to remediate combustion byproducts in Phases 1-5. *See* August 3, 2023 Judgment attached hereto as **Exhibit E.**

31. Maxus' total property damages due to the Fire, and the amount awarded for such damages at the trial, is within the $35 million Policy limits for such damage.

32. The jury also found that Travelers' conduct constituted a vexatious refusal to pay Maxus pursuant to the Policy and awarded Maxus its attorney's fees and assessed a penalty against Travelers. *See* **Exhibit E**.

## Royal Restoration, LLC's Claim

33. On or about August 21, 2020, Royal filed a mechanic's lien in the Circuit Court of Jefferson County, AL, known as *Royal Restoration, LLC v. BCCM Construction Group, Inc., Maxus Metropolitan, LLC, Glen Acquisition, LLC, and Great Southern Bank*, Case No. 01-CV-2020-903581.00 (the "Royal Lawsuit").

34. The Royal Lawsuit was subsequently stayed and the dispute between Royal and BCCM was referred to arbitration through the American Arbitration Association ("Arbitration") by Order of the Circuit Court of Jefferson County, Alabama.

35. In the Arbitration, Royal sought the principal amount of $5.6 million, plus interest and attorneys' fees, for amounts allegedly owed by BCCM to Royal under the subcontract and for extra work Royal alleged it was required and compelled to perform.

36. The majority of Royal's claim stemmed from a February 17, 2020 change order it issued in the amount of $4,458,855.60 for additional combustion byproduct remediation work it had performed because of the Fire. *See* Royal's February 17, 2020 Change Order attached hereto as **Exhibit F.**

37. Maxus and BCCM disputed Royal's claim for payment pursuant to the February 17, 2020 change order (the "Disputed Claim").

7
62735965v2
Case 4:24-cv-00044-FJG   Document 1   Filed 01/17/24   Page 7 of 11

38. Royal also demanded payment for an undisputed change order and withheld retainage in the amount of $684,015.84 (the "Undisputed Claim"); because Maxus did not dispute that these amounts were owed, it pursued and was awarded these amounts at trial.

39. BCCM asserted a right to indemnification from Maxus for the damages claimed by Royal.

40. Maxus notified Travelers of Royal's Disputed Claim in or around July 18, 2022, noting that the amounts were disputed, subject to an arbitration proceeding, and therefore Maxus' claim against Travelers for any portion of the Disputed Claim amount was contingent upon resolution of the Disputed Claim with Royal.

41. At the time of the Trial, BCCM and Royal had not resolved their dispute, nor had any award been issued in the matter, so a claim for payment of the Disputed Amount was not yet ripe and was not included in Maxus' claim against Travelers.

42. After Trial, Maxus informed Travelers that there was going to be a mediation of Royal's Disputed Claim and invited Travelers to participate in settlement discussions.

43. Travelers failed and refused to participate in settlement discussions related to the Disputed Claim.

44. Following mediation, BCCM and Royal resolved their dispute, and BCCM agreed to pay Royal $1,265,984.16 for the Disputed Claim, plus $684,015.84 (the entirety of the Undisputed Claim).

45. BCCM then renewed its demand for indemnification from Maxus for the additional amounts paid to Royal.

46. Maxus agreed to reimburse BCCM the entirety of the Undisputed Claim, and $1,140,984.16 for the Disputed Claim.

47. BCCM agreed to contribute $125,000 of the $1,265,984.16 Disputed Claim to satisfy the settlement with Royal, with the understanding that Maxus must reimburse BCCM that amount if Maxus is able to recover the same under the Policy.

48. Maxus in turn has demanded reimbursement from Travelers for amounts paid for the Disputed Claim, as part of its property damages arising out of the Fire (the "Claim"). *See* October 5, 2023 correspondence attached hereto as **Exhibit G.**

49. Almost a month later, Travelers denied the Claim, even though it was determined at Trial that combustion byproduct remediation costs arising from the Fire were covered under the Policy. *See* November 3, 2023 correspondence attached hereto as **Exhibit H.**

50. Travelers' refusal to pay is wrongful and constitutes a breach of contract.

## COUNT I
## BREACH OF CONTRACT

51. Maxus incorporates by reference all previous allegations as though set forth fully herein.

52. Travelers has a duty to pay for the loss and damage arising out of the Claim under the terms and provisions of the Policy and applicable law.

53. Travelers also has a duty to conduct a reasonable, timely and sufficiently thorough investigation.

54. Travelers has a duty to respond appropriately and in a timely manner to claims submissions and correspondence from insureds.

55. Maxus has complied with all conditions precedent to recovery under Travelers' Policy.

56. Travelers has breached its obligations under the Policy by unreasonably refusing and/or failing to investigate, to timely respond to correspondence, and pay, in full, all loss and

damage arising out of or in connection with the Fire and specifically, the Claim. Specifically, Travelers:

(a) Failed to properly or timely investigate Maxus's Claim; and

(b) Failed to properly or timely remit funds for undisputed damages.

57. As a result of its breach of contract, Travelers has deprived Maxus of the benefit of insurance coverage for which substantial premiums were paid and has damaged Maxus.

## COUNT II
## VEXATIOUS REFUSAL TO PAY

58. Maxus incorporates by reference all previous allegations as though set forth fully herein.

59. Travelers has vexatiously failed and refused to pay the Claim without reasonable cause or excuse, in violation of RSMo §375.420.

60. Travelers owes Maxus a duty of good faith and fair dealing and has breached this duty, including, but not limited to, engaging in the following acts:

(a) Unreasonably failing or refusing to accept coverage for the Claim, despite the jury verdict finding combustion byproduct remediation was covered under the Policy;

(b) Failing to investigate Maxus's Claim fairly or in a timely manner; and

(c) Failing to pay for the Claim.

61. Travelers' above-described actions constitute a breach of its duty of good faith and fair dealing owed to its insured, Maxus.

62. As a result of Travelers' wrongful conduct, Travelers is liable to Maxus for penalties under RSMo §375.420, plus attorneys' fees and costs in the case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Maxus Metropolitan, LLC respectfully requests entry of judgment in its favor and against Defendant Travelers Property Casualty Company of America as follows:

(a) Actual damages in excess of $1,265,984 for property damage owed under the Policy due to the Fire.

(b) Pre-judgment and post-judgment interest based upon and added to the damages as allowed by law;

(c) Penalties, attorneys' fees and costs associated with this action;

(d) Such further and additional relief as this Court deems just and proper.

Plaintiff demands a jury trial on all issues.

Date: January 17, 2024

Respectfully submitted,

LATHROP GPM LLP

/s/ *Michael J. Abrams*
Michael J. Abrams, MO Bar #42196
Kimberly K. Winter, MO Bar #45029
Brad P. Johnson, MO Bar #72505
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
816.292.2000 / 816.292.2001 (Fax)
michael.abrams@lathropgpm.com
kim.winter@lathropgpm.com
brad.johnson@lathropgpm.com

Attorneys for Plaintiff
Maxus Metropolitan, LLC